## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**RYAN URBIN,**

     **Plaintiff,**

**vs.**                           **Case No.  1:23cv31-AW-MAF**

**RICKY DIXON**
**and CHERYL MASON,**

     **Defendants.**
_____/

## <u>SECOND REPORT AND RECOMMENDATION</u>

This is a pro se civil rights action, filed under 42 U.S.C. § 1983.

Plaintiff Ryan Urbin is a prisoner of the Florida Department of Corrections

("DOC").  His second amended complaint brought claims against three

persons in their official capacities:  DOC Secretary Ricky D. Dixon; DOC

Education Supervisor Cheryl Mason; and Chairperson of the Florida

Commission on Offender Review ("FCOR") Melinda N. Coonrod.  ECF No.

26.  Defendant Coonrod has been dismissed from this case.  ECF No. 41.

Now pending is a motion to dismiss, ECF No. 30, filed by Defendants

Dixon and Mason.  Plaintiff timely filed his opposition to that motion, ECF

No. 37, and then recently filed a notice of supplemental authority, ECF No. 39, in support of his opposition.  The motion to dismiss is ready for ruling.

**PLAINTIFF'S ALLEGATIONS, ECF No. 26**

Plaintiff Ryan Urbin is currently serving a life sentence without the possibility of parole ("LWOP").  At the time of the underlying offenses in 1995, Urbin was just 17 years of age.  ECF No. 26 at 4.  Urbin was found guilty of first degree murder (count one) and armed robbery (count two) and sentenced to death on count one and sentenced to 26 years incarceration on count two.  *Id.* at 5.  His death sentence was later vacated and he was given a "mandatory life sentence without the possibility of parole."

Following the United State Supreme Court's decision in *Miller v Alabama,* the Florida legislature made "sweeping new changes to Florida's juvenile sentencing laws" which included, *inter alia*, review of sentences imposed on juvenile offenders who were convicted of homicide offenses. *Id.* at 6.  As a result, Urbin filed a post-conviction motion for relief pursuant to *Miller* and was resentenced to another LWOP sentence.  Even so, because of Florida's new sentencing laws, he will be "afforded the opportunity to demonstrate maturity and rehabilitation at a Judicial Review"

of his LWOP sentence after serving 15 years in prison – which Urban has already served.  ECF No. 26 at 7.

Following his resentencing, Urbin sought "comprehensive programming" which he believes will help him demonstrate maturity and rehabilitation.  Urbin found a program called "*The Correctional Transition Program*" ["CTP"] which is offered by the DOC at Everglades Correctional Institution.  *Id*.  The program helps prepare "long term inmates who are eligible for parole to reenter society" and leave behind institutional habits.  *Id.*  Urbin contends that completion of the program "is a gateway to being granted parole" and would be "critical" to his ability to show maturity and rehabilitation.  *Id*. at 8-10.  However, Urbin's request for placement into the program was denied.

Urbin exhausted administrative remedies and then brought suit against the Defendants for denying him a meaningful and realistic opportunity to establish "maturity and rehabilitation" in violation of his constitutional rights.  After the dismissal of Defendant Coonrod, five claims remain in this case: (1) a due process claim against Defendant Mason for using a non-existent rule to deny him entry into the CTP program (count 1);

4

(2)-(3) two separate due process claims against Defendant Dixon for excluding him from the CTP program (counts 2-3); (4) an equal protection claim against Defendants Dixon and Mason for denying him the opportunity to participate in the CTP program while allowing other similarly situated "juvenile homicide offenders to be eligible for placement in the CTP [program] to prepare for their parole hearing after completing a specific term of years" (count 5); and (5) an Eighth Amendment claim for cruel and unusual punishment against Defendant Dixon for excluding him from the CTP (count 6).  ECF No. 26 at 12-16.  Urbin seeks injunctive and declaratory relief, as well as a jury trial.  ECF No. 26 at 15-16.

**STANDARD OF REVIEW**

Whether a complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted turns on whether the plaintiff has alleged enough plausible facts to support the claim stated.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965); *see also Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019) (per curiam).  "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  *Twombly*, 127 S. Ct. at 1965, (quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

The pleading standard is not heightened, but flexible, in line with Federal Rule of Civil Procedure 8's command to simply give "fair notice" to the defendant of the plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema*, 534 U.S. 506, 513, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to "less stringent standards than are pleadings drafted by an attorney." *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people, with the right to do so representing an in terrorem increment of settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 1634, 161 L. Ed. 2d 577 (2005) (citation omitted) (alteration in original).

**Motion to Dismiss, ECF No. 30**

Defendants raise three primary grounds for dismissal.  First, they contend that Plaintiff lacks standing to bring this lawsuit because he cannot show an injury-in-fact from being denied CTP entry.  ECF No. 30 at 9-12. Second, Defendants argue that the complaint fails to state a claim for a due process violation, an equal protection violation, or an Eighth Amendment violation.  *Id.* at 12-23.  Third, Defendants maintain that Plaintiff is not entitled to either declaratory relief or injunctive relief.  *Id.* at 23-26.

**Plaintiff's Response, ECF No. 37**

Urbin opposes Defendants' motion and contends he has standing to bring this case because he has suffered an "actual injury."  ECF No. 37 at 7-8.  He further argues that his complaint presents sufficient facts to state the relevant claims and contends he has a constitutional right "to an opportunity to gain release with demonstrated maturity and rehabilitation through rehabilitative programming."  *Id.* at 12.

Case No. 1:23cv31-AW-MAF

**ANALYSIS**

**A.   Article III Standing**

"Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'"  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (citations omitted).  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) he or she has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000).  "The plaintiff bears the burden of establishing each element."  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019) (citation omitted). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citation and internal quotation marks omitted).

9

In this case, the determination of whether Urbin has alleged sufficient facts to demonstrate that he has sustained a concrete injury must be considered in the context of developing case law.  First, the United States Supreme Court held in *Roper v. Simmons,* 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), "that the Eighth Amendment prohibits capital punishment for those under the age of 18 at the time of their crimes." *Montgomery v. Louisiana*, 577 U.S. 190, 206, 136 S. Ct. 718, 732, 193 L. Ed. 2d 599 (2016), *as revised* (Jan. 27, 2016).  Then in 2010, the United States Supreme Court held that "the Eighth Amendment forbids the sentence of life without parole" for juvenile nonhomicide offenders. *Graham v. Florida*, 560 U.S. 48, 74, 130 S. Ct. 2011, 2030, 176 L. Ed. 2d 825 (2010), *as modified* (July 6, 2010).  The Court noted that some juvenile offenders may "commit truly horrifying crimes" and "may turn out to be irredeemable" and "deserving of incarceration for the duration of their lives." *Graham*, 560 U.S. at, 75, 130 S. Ct. at 2030.  However, the Eighth Amendment prohibits "States from making the judgment at the outset that those offenders never will be fit to reenter society."  560 U.S. at 75, 130 S. Ct. at 2030.  Furthermore, the Court held that while states are "not required

10

to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," a state "must" give those offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. *Id.* Even so, it is up to the "State, in the first instance, to explore the means and mechanisms for compliance." *Id.*

Two years later, the Court extended *Graham*'s holding to juvenile offenders who had committed murder. *See Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). The Court emphasized that youthfulness is one factor that must be taken into consideration at sentencing and re-emphasized *Graham's* concern with punishments that were "unconstitutionally excessive." *Miller*, 567 U.S. at 474, 132 S. Ct. at 2466. Concerned that "mandatory penalty schemes" prevented the "sentencer from taking account of these central considerations," the Court held that mandatory life-without-parole [LWOP] sentencing schemes for juvenile offenders violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Miller*, 567 U.S. at 476-79, 132 S. Ct. at 2467-69.

Also relevant is *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), *as revised* (Jan. 27, 2016), another case in a series of decisions involving sentencing of juvenile offenders.  There, the Court concluded that "*Miller* announced a substantive rule of constitutional law" that must be given "retroactive effect."  *Montgomery*, 577 U.S. at 212, 136 S. Ct. at 736.

In this case, Urbin has alleged that he has a right to demonstrate "maturity and rehabilitation" such that he could gain release from prison. He contends that he must be given a meaningful opportunity to do so, and that completion of the CTP is a "gateway" to being granted release.  Urbin claims that Defendants have denied him that opportunity, a violation of a protected interest.  Plaintiff has, therefore, alleged a concrete injury that is actual, particularized and not hypothetical.

Redressability is also met.  To be clear, Urbin is entitled to a meaningful opportunity to show "maturity and rehabilitation," and he has alleged that "the CTP was the only comprehensive program available" to him to make that showing.  A ruling by this Court that Defendants violated

12

Urbin's constitutional rights by denying him entrance into the program would result in favorable declaratory and injunctive relief.

In *Howard v. Coonrod*, 546 F. Supp. 3d 1121 (M.D. Fla. 2021), Florida inmates – "serving life *with* the possibility of parole sentences for crimes committed when they were under the age of 18 years old" - alleged that their constitutional rights were violated by Florida's parole policies. *Id.* at 1125. One claim raised was that "juvenile lifers" were denied a meaningful opportunity to show "maturity and rehabilitation." Defendants argued that the plaintiffs lacked standing. *Id.* at 1128. The district court found that the plaintiffs had suffered "a concrete injury that is traceable to the challenged actions of Defendants." *Id.* Further, the court determined that it was "likely, not speculative, that a favorable decision [would] lead to relief sought by Plaintiffs." *Id.* at 1129. The standing argument was rejected in the Middle District of Florida and should be rejected by this Court as well. Plaintiff Ryan Urbin has standing to bring his claims. He has shown an underlying injury that is fairly traceable to Defendants' actions and which may be redressed by a favorable ruling from this Court. Defendants' motion to dismiss on standing grounds should be denied.

### B.    Plaintiff's § 1983 Due Process Claims

Defendants Dixon and Mason argue that Urbin has failed to state a claim for a due process violation.  ECF No. 30 at 12.  In particular, they argue that "Plaintiff has no due process liberty interest in the possibility of parole or clemency, because the decision to release a prisoner rests on a myriad of considerations."  *Id.* at 14.  Defendants further contend that "Plaintiff does not have a protected liberty interest in his potentially being granted parole or probation at future date."  *Id.* at 15.  They also argue that "Plaintiff has not alleged an adequate liberty interest at issue in this case, as he has no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs."  *Id.*

Urbin says that Defendants have misconstrued his due process claims.  ECF No. 37 at 9.  He points out that he is "entitled to comprehensive programming" as a matter of law, to judicial review of his sentence which was imposed as a juvenile offender, and to demonstrate "maturity and rehabilitation."  *Id.*  He asserts that he has a "categorical entitlement to demonstrate maturity and reform," and has a "liberty interest

14

in his upcoming judicial review hearing" pursuant to Florida law.  *Id.* at 10-11.

Previously, the decision of whether or not to grant parole was left to the discretion of the Parole Commission and there was "no constitutional right to parole in Florida."  *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986) (citing *Hunter v. Florida Parole & Probation Comm'n*, 674 So. 2d 847, 848 (11th Cir. 1982)).  Defendants continue to make that argument, noting "there is no federal constitutional right to parole."  ECF No. 30 at 14 (citation omitted).  However, the legal landscape has changed.  Although Defendants acknowledge that Urbin is entitled to judicial review of his sentence, they contend that his opportunity for release is "purely speculative."  *Id.* at 15.  That argument is not on point. Urbin is not entitled to release, but he is entitled to an opportunity to show that he should be released.  He has a protected liberty interest in that opportunity.

As noted above, "mandatory life-without-parole sentences for juveniles violate[s] the Eighth Amendment."  *Miller*, 567 U.S. 460 (2012); *Graham*, 560 U.S. 48 (2010).[2]   In the wake of those decisions,

> "the Florida Legislature unanimously enacted legislation in 2014 designed to bring Florida's juvenile sentencing statutes into compliance with the United States Supreme Court's recent Eighth Amendment juvenile sentencing jurisprudence." *Horsley v. State*, 160 So. 3d 393, 394 (Fla. 2015).  This juvenile sentencing legislation is found in chapter 2014-2020, Laws of Florida, and has been codified in sections 921.1401 and 921.1402, Florida Statutes.  *Id*. at 401.

*Reyes v. Fla. Dep't of Corr.*, No. 22-CV-60567, 2023 WL 3178563, at *17 (S.D. Fla. Apr. 11, 2023), report and recommendation adopted, No. 22-CV-60567-RAR, 2023 WL 3172551 (S.D. Fla. May 1, 2023).  Juvenile offenders have the right to request a sentencing review.  Florida law specifies that juvenile offenders sentenced to life in prison are "entitled to a review of his or her sentence after 25 years."  *Id.* (quoting Fla. Stat. §

---

[2] "Importantly, however, *Graham* did not prohibit life without parole for offenders who were under 18 and committed *homicide*."  Jones v. Mississippi, 141 S. Ct. 1307, 1314, 209 L. Ed. 2d 390 (2021).  If such a sentence is imposed, the sentencer must consider the offender's "youth and attendant characteristics" before imposing the sentence and must have "discretion to impose a different punishment."  141 S. Ct. at 1314, 1316.

921.1402(2)(a), (b)).  If an eligible offender (such as Urbin) requests a

sentence review hearing pursuant to that statute, the offender "is entitled to

be represented by counsel," to have a public defender appointed if the

juvenile offender cannot afford an attorney, and the offender is entitled to a

"sentence review hearing to determine whether the juvenile offender's

sentence should be modified."  Fla. Stat. § 921.1402(2)(a), (b).  At the

hearing, "the court shall consider any factor it deems appropriate, including

all of the following:

> (a) Whether the juvenile offender demonstrates maturity and rehabilitation.
>
> (b) Whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing.
>
> (c) The opinion of the victim or the victim's next of kin. The absence of the victim or the victim's next of kin from the sentence review hearing may not be a factor in the determination of the court under this section. The court shall permit the victim or victim's next of kin to be heard, in person, in writing, or by electronic means. If the victim or the victim's next of kin chooses not to participate in the hearing, the court may consider previous statements made by the victim or the victim's next of kin during the trial, initial sentencing phase, or subsequent sentencing review hearings.
>
> (d) Whether the juvenile offender was a relatively minor participant in the criminal offense or acted under extreme duress or the domination of another person.

(e) Whether the juvenile offender has shown sincere and sustained remorse for the criminal offense.

(f) Whether the juvenile offender's age, maturity, and psychological development at the time of the offense affected his or her behavior.

(g) Whether the juvenile offender has successfully obtained a high school equivalency diploma or completed another educational, technical, work, vocational, or self-rehabilitation program, if such a program is available.

(h) Whether the juvenile offender was a victim of sexual, physical, or emotional abuse before he or she committed the offense.

(i) The results of any mental health assessment, risk assessment, or evaluation of the juvenile offender as to rehabilitation.

Fla. Stat. § 921.1402(6).  Following the hearing, if the court determines "that the juvenile offender has been rehabilitated and is reasonably believed to be fit to reenter society, the court shall modify the sentence and impose a term of probation of at least 5 years."  Fla. Stat. § 921.1402(7). On the other hand, if "the court determines that the juvenile offender has not demonstrated rehabilitation or is not fit to reenter society, the court shall issue a written order stating the reasons why the sentence is not being modified."  Fla. Stat. § 921.1402(7).

Review of this statute sufficiently demonstrates a protected liberty interest.  Urbin alleged as much in the complaint.  ECF No. 26 at 7, 14.  Pursuant to *Graham,* 560 U.S. at 75, 130 S. Ct. at 2030, he is not guaranteed "eventual freedom," but he must be provided "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  Urbin has a constitutional right to that opportunity.

Urbin's complaint alleges that he has been improperly denied that opportunity, first, because he was wrongfully informed that the FCOR determines who can be admitted to the CTP and, second, because the CTP was the "only comprehensive programming available" for him and he has been excluded from participation.  ECF No. 26 at 10-11.  Defendants, however, contend that Urbin "has no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs."  ECF No. 30 at 16.  Urbin says that he does.  ECF No. 37 at 11-12.  Relying on *Graham,* Urbin contends he has a "categorial entitlement" to demonstrate maturity and reform.  *Id*. at 12.  He suggests that he cannot do that without "comprehensive programming."  *Id.*

Case No. 1:23cv31-AW-MAF

*Graham* did mandate that states must give juvenile offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at, 75, 130 S. Ct. at 2030. The Court did not, however, specify the manner in which that opportunity must be given. "It is for the State, in the first instance, to explore the means and mechanisms for compliance." *Id.* at 75, 130 S. Ct. at 2030.

In Florida, juvenile offenders have an opportunity to obtain judicial review after serving a specified number of years, either 15, 20, or 25 years, depending on the statutory basis of the sentence. *See* Fla. Stat. § 921.1402(2)(a) – (d). That judicial review will allow the offender to demonstrate maturity and rehabilitation, one of the 9 factors to be considered. According to Urbin, the CTP program is an important part of his ability to make that showing. Ultimately, the "court's task at a sentence review hearing is singular: determine whether 'the juvenile offender has been rehabilitated and is reasonably believed to be fit to reenter society.'" § 921.1402(7) (quoted in *Murphy v. State*, 368 So. 3d 1025, 1027 (Fla. 2nd DCA 2023)). Thus, a showing of rehabilitation is crucial.

20

Urbin's complaint alleged that a "Florida Statute . . . mandates 'comprehensive programming' for 'special needs offenders'" which, according to the complaint, includes juvenile offenders.  ECF No. 26 at 9. He said that the "only comprehensive programming available was the CTP."  *Id.* at 10.  Defendants argue that Urbin "has no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs."  ECF No. 30 at 16.

Neither Urbin nor the Defendants provided legal citations to support their assertions.  Dismissal of Urbin's due process claims should not be based on an unsupported legal conclusions made by the Defendants any more than a claim could proceed if unsupported by facts.  Instead, ruling on the motion to dismiss must consider whether Urbin has alleged sufficient facts, which must be accepted as true, to state a plausible claim.

While it is not clear that Urbin has a right to a particular program or training, Urbin has a right to judicial review where at least 9 factors will be considered.  Beyond demonstrating "maturity and rehabilitation," the court will also consider "[w]hether the juvenile offender has successfully obtained a high school equivalency diploma or completed another educational,

21

technical, work, vocational, or self-rehabilitation program, if such a program is available."  Fla. Stat. § 921.1402(6)(g).  Thus, programs available to Urbin and programs completed by him are necessarily important.

Because Urbin has demonstrated a liberty interest in judicial review of his LWOP sentence, and because he claimed that Defendants have wrongfully denied him the opportunity to make the showing required in that review, he has presented a sufficient claim to withstand the motion to dismiss.  *See Howard*, 546 F. Supp. 3d at 1132 (finding plaintiffs sufficiently alleged due process violations and relying on *Flores v. Stanford*, No. 18 CV 2468 (VB), 2019 WL 4572703, at *10 (S.D.N.Y. Sept. 20, 2019) (concluding that "juvenile offenders serving a maximum term of life have a cognizable liberty interest in obtaining parole upon demonstrating maturity and rehabilitation").  The due process claims should not be dismissed at this stage of the litigation.

## C.   Plaintiff's § 1983 Equal Protection Claim

Defendants argue that Urbin fails to allege a sufficient equal protection claim for two reasons.  ECF No. 30.  First, they argue he is not "similarly situated" to other inmates because he is not "parole eligible" and

22

does not have a release date.  *Id.* at 18-20.  Second, they point out that Urbin has "not alleged a constitutionally-protected basis for his equal protection claim."  *Id.* at 18-19.

In response, Urbin asserts that his equal protection claim is based on a "class of one" theory and says Defendants have misconstrued his claim. ECF No. 37 at 15-16.  He argues that he has been intentionally treated differently from other similarly situated inmates, but there is no rational basis for the difference in treatment.  *Id.* at 16.

This argument is unaddressed.  Instead, Defendants addressed the typical equal protection claim – that a prisoner was treated differently and subjected to discrimination – and that Urbin alleges no facts to support an "invidious discrimination" claim.  ECF No. 30 at 17.  But the Court agrees with Urbin – that is not his claim.  His complaint alleged that other similarly "situated juvenile homicide offenders" were allowed to participate in the CTP to prepare for parole hearings when he was denied "the same opportunity" to prepare for a judicial review of his sentence.  ECF No. 26 at 14.  Both categories of inmates face the possibility of release from prison, whether through parole or judicial release.  In that respect, the two

categories of inmates may be deemed "similarly situated."   Although Defendants argue Urbin is "not similarly situated" to inmates who are deemed eligible for the CTP, the Court disagrees.  Both inmates face the possibility of release from prison.  Even an inmate who is parole eligible has no certainty of his release.

"The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner."  *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009) (citation omitted).  "A 'class of one' equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1032 n.1 (11th Cir. 2008) (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoted in *Leib*, 558 F.3d at 1306-07)).

In this case, Urbin has presented a "class of one" theory – that is, he was "singled out" for different treatment than identifiable, similarly situated inmates.  *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601, 128 S.

24

Ct. 2146, 2153, 170 L. Ed. 2d 975 (2008).  Given the liberal reading of a

complaint which is required for *pro se* litigants, Urbin's complaint can

reasonably be read as alleging that "juvenile homicide offenders" who are

given LWOP sentences are treated differently than "juvenile homicide

offenders" who are given parole-eligible sentences.  ECF No. 26 at 14.

Arguably, there is an arbitrary basis for the different treatment because

juvenile offenders such as Urbin are entitled to judicial review and the

possibility of release from prison.  Urbin contends that a judicial review

hearing is "very similar to a parole hearing of juvenile offender with parole"

sentences.  ECF No. 37 at 16.  Urbin's allegations are sufficient to state an

equal protection claim.  Village of Willowbrook v. Olech, 528 U.S. 562, 565,

120 S. Ct. 1073, 1075, 145 L. Ed. 2d 1060 (2000); *see also Engquist*, 553

U.S. at 605, 128 S. Ct. at 2155  (noting that "the class-of-one theory of

equal protection—which presupposes that like individuals should be treated

alike, and that to treat them differently is to classify them in a way that must

survive at least rationality review" but finding it inapplicable "in the public

employment context"); *see also Watkins v. Cent. Broward Reg'l Park*, 799

F. App'x 659, 664 (11th Cir. 2020) (explaining "class of one" theory).  As

argued, the motion to dismiss the equal protection claim should be denied.

### D.    Plaintiff's § 1983 Eighth Amendment Claim

Defendants next argue that the Eighth Amendment claim is

insufficient because, as a conditions of confinement challenge, Urbin has

not alleged a "sufficiently serious" harm, nor has he shown that the

Defendants had a sufficiently "culpable state of mind."  ECF No. 30 at 20-

21.  They also contend that not being enrolled in the CTP is not an

"extreme condition."  *Id.* at 22.

Urbin responds by pointing out that under Supreme Court precedent,

he has a "constitutionally protected right to a meaningful opportunity for

release predicated on a demonstration of maturity and rehabilitation, and

any violation of that right is cognizable under the Eighth Amendment's

proscription against cruel and unusual punishment."  ECF No. 37 at 13

(citing to *Graham*).  He maintains that by denying his "admittance to CTP,"

the Defendants have denied him comprehensive programming (CTP)

necessary for a realistic opportunity for release . . . ."  *Id.* at 14.  He

contends that Florida "has only **one** comprehensive program for juvenile

offenders sentenced to life (with parole or judicial review hearings) that is designed specifically for them and that is CTP."  *Id.* at 13 (emphasis in original).

In his supplement, Urbin also argues that the recent state case of *Murphy v State*, 48 Fla. L. Weekly D1453 (Fla. 2nd DCA July 26, 2023), supports his claim "that the failure to place him in comprehensive programming [CTP] constitutes cruel and unusual punishment."  ECF No. 39 at 2.  The *Murphy* case does not discuss the Eighth Amendment and is not relevant for this issue.

The Eighth Amendment's prohibition against cruel and unusual punishments is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1992).  "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"  *Weems v. United States,* 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 (1910) (quoted in *Graham*, 560 U.S. at 59, 130 S. Ct. at 2021.  The "Eighth Amendment's rule against disproportionate sentences"

was central to the Court's decisions in *Graham* and in *Miller.*  560 U.S. at

73, 130 S. Ct. at 2029; *Miller*, 567 U.S. at 479, 132 S. Ct. at 2469.

Because life without parole sentences for juveniles would violate the Eighth

Amendment, the Court held that juvenile defendants must have some

meaningful opportunity to obtain release based on demonstrated maturity

and rehabilitation.  Urbin has alleged that Defendants deny him that

opportunity, in violation of the Eighth Amendment.  He has sufficiently

alleged an Eighth Amendment violation and, at this early stage of the

litigation, the claim should be permitted to continue.  See *Howard v.*

*Coonrod*, 546 F. Supp. 3d 1121, 1132 (M.D. Fla. 2021) (concluding that

plaintiffs "sufficiently pleaded Eighth Amendment violations" in the way

"Florida's parole system denies a 'realistic opportunity for release based on

demonstrated maturity and rehabilitation'").

One additional point is worth noting.  Urbin's allegation that he is

denied classes which would help him with rehabilitation and maturity

highlights a concern noted by Supreme Court, as pointed out by *amicus*,

that "defendants serving life without parole sentences are often denied

access to vocational training and other rehabilitative services that are

Case No. 1:23cv31-AW-MAF

available to other inmates." *Graham*, 560 U.S. at 74, 130 S. Ct. at 2030.

"For juvenile offenders, who are most in need of and receptive to

rehabilitation, . . . the absence of rehabilitative opportunities or treatment

makes the disproportionality of the sentence all the more evident." 560

U.S. at 74, 130 S. Ct. at 2030. The lack of classes for Urbin also supports

his Eighth Amendment claim.

### E.    Entitlement to Declaratory & Injunctive Relief

Defendants contend that because there has been "no constitutional

injury" shown or constitutional violation properly alleged, there is "no

purpose or need for the Court to issue a declaratory judgment as to the

status of [Urbin's] rights." ECF No. 30 at 23. That argument should be

rejected because Urbin has alleged plausible constitutional claims for relief.

Furthermore, Defendants argue that Urbin has not shown "the

requisite elements necessary for a preliminary injunction." *Id.* at 24. Urbin

sought injunctive relief from the Defendants, but his complaint does not

request a preliminary injunction. *See* ECF No. 26 at 15. This argument

should also be rejected. Urbin's ultimate entitlement to injunctive relief is a

matter which should remain pending.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 30, be **DENIED** and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on January 18, 2024.


     S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**